# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Latoya Rogers, | Civil Action No. 2:19-cv-2807 |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Michael Hamilton, Individually and as an Employee/Agent/Servant of South Carolina State Association of Letter Carriers, Inc., And National Association of Letter Carriers, AFL-CIO; South Carolina State Association Of Letter Carriers, Inc., National Association of Letter Carriers, AFL-CIO | |
| Defendants. | |

Before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 74) recommending the Court grant Defendants' partial motion to dismiss and remand Plaintiff's remaining state law claims. For the reasons set forth below, the Court adopts the R & R as the Order of the Court.

**I.     Background**

On December 18, 2021, Plaintiff filed an Amended Complaint bringing claims against Defendants for: (1) breach of the Fair Duty of Representation ("DFR") in violation of 29 U.S.C. § 159; (2) defamation; and (3) assault.[1] (Dkt. No. 63). Plaintiff is a letter carrier employed by the United States Postal Service ("USPS"). (Dkt. No. 63 at ¶ 63). Plaintiff is a member of Defendant National Association of Letter Carriers, AFL-CIO ("NALC") labor union. (*Id.* at ¶ 3). The Amended Complaint alleges that Defendant Hamilton is employed by the USPS and is the

---

[1] The original complaint was filed in the Charleston County Court of Common Pleas on August 30, 2019. (Dkt. No. 1-1). Defendants removed the case to federal court on October 2, 2019 based on federal question jurisdiction. (Dkt. No. 1).

1

President and Union Representative of Branch 3902 of Defendant South Carolina State Association of Letter Carriers, Inc. ("SCSALC"), a branch of NALC that that incorporates Charleston, South Carolina. (*Id.* at ¶¶ 4, 8-9). The Amended Complaint alleges NALC and SCSALC (collectively the "Unions") are the exclusive bargaining representatives of all city letter carriers employed by the USPS in South Carolina. (*Id.* at ¶ 10).

Plaintiff was removed from her job as a letter carrier after her involvement in a car accident while completing her route on May 22, 2018. (*Id.* at ¶¶ 11-14). Plaintiff alleges her Union Representative, Defendant Hamilton, told her he would appeal her removal from the USPS. (*Id.* at ¶¶ 15-16). Plaintiff alleges that on September 17, 2018, she met with Defendant Hamilton to discuss her removal. (*Id.* at ¶ 22). Plaintiff alleges Defendant Hamilton pushed back his chair, leaned back, unbuckled his belt, and told Plaintiff performing a sexual act on him was what she needed to do for him to fulfill his obligations as a Union Representative. (*Id.* at ¶¶ 24-25). Plaintiff alleges she felt shocked, scared, intimidated, embarrassed, and humiliated, and she feared bodily harm from Defendant Hamilton. (*Id.* at ¶¶ 28-29). Plaintiff alleges that after the meeting, Defendant Hamilton called her and made sexual comments, stating she would have to give him sexual favors in exchange for his help getting her job back. (*Id.* at ¶¶ 33-36).

Plaintiff alleges on September 20, 2018 she reported Defendant Hamilton's conduct to the North Charleston Police Department. (*Id.* at ¶ 37). Plaintiff alleges her counsel sent Defendant SCSALC a certified letter dated later September 28, 2018 informing it of Defendant Hamilton's alleged sexual harassment. (*Id.* at ¶ 38). Plaintiff alleges Defendant SCSALC informed Defendant Hamilton in October 2018 about Plaintiff's allegations but failed to take steps to investigate or protect Plaintiff. (*Id.* at ¶ 40). Plaintiff alleges that in a letter dated December 3, 2018, Defendant NALC was again notified of Plaintiff's sexual harassment claims against Defendant Hamilton and

Plaintiff's objections to Defendant Hamilton's involvement in her reinstatement. (*Id.* at ¶ 49). Plaintiff alleges the Unions took no action to investigate her harassment complaint. (*Id.* at ¶ 50).

Plaintiff alleges an arbitration hearing took place on December 4, 2018 that resulted in Plaintiff being reinstated as a letter carrier for the USPS. (*Id.* at ¶¶ 51-52). Plaintiff alleges she was placed in the same branch as Defendant Hamilton and was denied the ability to transfer. (*Id.* at ¶¶ 49-54). Plaintiff alleges that in January 2020, Defendant Hamilton made false statements about Plaintiff's work performance and false accusations about Plaintiff to get Plaintiff fired. (*Id.* at ¶¶ 58-59). Plaintiff alleges that she again informed management of Defendant Hamilton's previous and ongoing harassment. (*Id.*). Plaintiff alleges that in March 2020, while driving on her letter carrier route, an unknown man stopped to inquire if she was the one making complaints about Hamilton. (*Id.* at ¶ 60). Plaintiff believes Defendant Hamilton requested that this person frighten and intimidate Plaintiff. (*Id.*). Plaintiff alleges that around March 20, 2020, Defendant Hamilton threw a satchel of mail in a threatening manner to frighten and intimidate her. (*Id.* at ¶ 61). Plaintiff alleges the Unions breached the DFR by failing to fulfill Plaintiff's requests that grievances be filed against Defendant Hamilton. (*Id.* at ¶ 78).

On January 8, 2021, Defendants filed a motion to dismiss Plaintiff's DFR claim failure to state a claim. (Dkt. No. 69). Plaintiff filed a response in opposition and Defendants filed a reply. (Dkt. Nos. 72, 73). On April 23, 2021, the Magistrate Judge issued an R & R recommending the Court grant Defendants' motion to dismiss and remand Plaintiff's remaining state law claims. On May 7, 2021, Plaintiff filed objections to the R & R. (Dkt. No. 75). On May 21, 2021, Defendants filed a response to Plaintiff's objections. (Dkt. No. 76). On June 4, 2021, Plaintiff filed a reply in support of her objections. (Dkt. No. 77). The matter is ripe for the Court's adjudication.

II.     **Legal Standard**

The Magistrate Judge makes only a recommendation to this Court that has no presumptive weight. The responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). This Court must make a *de novo* determination of those portions of the R & R Plaintiff specifically objects. Fed. R. Civ. P. 72(b)(2). Where Plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). In the absence of objections, the Court need not give any explanation for adopting the Magistrate Judge's analysis and recommendation. *See, e.g.*, *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation."). Plaintiff filed objections and the R & R is reviewed *de novo*.

### III. Discussion

Upon a careful review of the pleadings, briefing, the R & R, and objections to the R &R, the Court finds the Magistrate Judge comprehensively addressed the issues to conclude that Plaintiff's DFR claim is time-barred and that the allegations in the Amended Complaint fail to state a claim for violation of the DFR. Plaintiff objects to the Magistrate Judge's findings. (Dkt. No. 75).

Pursuant to Section 9(a) of the Fair Labor Relations Act ("FLRA"), labor unions have the exclusive status of bargaining representative for its members and are held to a duty of fair representation ("DFR"). 29 U.S.C. § 159(a). Under the DFR, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion

with complete good faith and honesty, and to avoid arbitrary conduct. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); 29 U.S.C. § 158(b) (NLRA provision prohibiting unfair practices by unions). "A breach of the [DFR] occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. To be arbitrary, "a union's conduct toward its member must be so far outside a wide range of reasonableness as to be wholly irrational, and examination of a Union's performance must be highly deferential to allow unions ample latitude in the performance of their representative duties. *Martin v. Potter*, 69 Fed. Appx 108, 111 (4th Cir. 2003). To be considered discriminatory conduct, the discrimination must be "intentional severe, and unrelated to legitimate union objectives." *Bakos v. American Airlines, Inc.*, 266 F. Supp.3d 729, 744 (E.D. Pa. 2017). To sustain a bad faith claim, a plaintiff must produce evidence that the union's conduct was grossly deficient. *Martin*, 60 Fed. Appx. at 111. In addition, a plaintiff must show that the alleged breach injured the plaintiff. *Gullaksen v. United Air Lines*, 68 F. Supp. 3d 66, 71 (D.D.C.).

There is a six-month statute of limitations period for DFR claims. *Flowers v. Int'l Longshoreman's Ass'n Local 1422*, No. 2:19-cv-00254-DCN-MGB, 2019 WL 6093255, at *7 (D.S.C. June 4, 2019), *adopted by* 2019 WL 3927444 (D.S.C. Aug. 20, 2019). The statute of limitations begins to run on a DFR claim when "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Walter Irving Banks v. International Union of Operating Engineers Local 99*, 200 F. Supp. 3d 70, 74 (D.D.C. 2016). The claim arises when the plaintiff could first successfully maintain a suit based on that cause of action, or when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation. *Gilfillan v. Celanese Ag*, 24 F. Appx. 165, 167 (4th Cir. 2001). Generally, the claim arises when the plaintiff could first

5

successfully maintain a suit based on that cause of action or when the claimant discovers, or in the exercise of reasonable diligence should have discovered the acts constituting the alleged violation. *Id.* (internal citations omitted).

Although affirmative defenses, such as the defense that a plaintiff's claim is time-barred, generally cannot be reached on a motion to dismiss, "the defense may be reached by a motion to dismiss filed under Rule 12 (b)(6) . . . if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

Upon a careful review of the pleadings, the briefing, and the R & R, the Court finds the Magistrate Judge correctly determined that Plaintiff's DFR claim is time-barred. The Magistrate Judge found that Plaintiff knew or should have known the Unions failed to investigate her allegations regarding Defendant Hamilton's sexual harassment by November or December of 2018. (Dkt. No. 74 at 11-13). Plaintiff objects to the Magistrate Judge's finding, arguing that the continuing violation doctrine provides that the statute of limitations begins to run only after the date of the last injury. (Dkt. No. 75 at 4) (citing *Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir. 2012) (explaining the continuing violation doctrine is "one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality.") *Id*. at 330. The continuing violation doctrine is "generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it." *Dziura v. United States*, 168 F.3d 581, 583 (1st Cir. 1999). "It is well settled that the continuing violations doctrine is not applicable in the duty of fair representation cases." *Devitt v. Potter*, 234 F. Supp. 2d 1034, 1042 (D.N.D. 2002) (citing *Local*

6

*Lodge No. 1424 v. N.L.R.B.*, 362 U.S. 411, 422 (1960) (stating the applicability of the sixth month statute of limitations period cannot be avoided by invoking the doctrine of continuing violations); *see also Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 305-06 (7th Cir. 1983).

Upon consideration of Plaintiff's objection, the Court finds the continuing violation doctrine is inapplicable based on the allegations in the Amended Complaint. The Amended Complaint makes clear that Plaintiff was on notice of any potential claims against Defendants arising from the September 2018 meeting. First, Plaintiff alleges she reported the incident to the police on September 20, 2018 and wrote a statement for the police detailing her encounter with Defendant Hamilton. (Dkt. No. 63 at ¶ 37). Second, Plaintiff alleges Defendant SCSALC received a certified letter from Plaintiff's counsel dated September 28, 2018, informing them of Defendant Hamilton's actions and Plaintiff's representation by counsel. (*Id.* at ¶ 38.) Third, Plaintiff alleges that on October 12, 2018, Plaintiff's counsel received a voicemail from Defendant Hamilton in which Defendant Hamilton acknowledged receipt of the certified letter sent to Defendant SCSALC. (*Id.* at ¶39). Fourth, Plaintiff alleges, "upon information and belief, Defendant SCSALC informed Defendant Hamilton at this time of Plaintiff's allegations but took no steps to investigate or otherwise protect Plaintiff." (*Id.* at ¶ 40). Fifth, Plaintiff alleges that by November 2018, the Unions had not taken any action on her harassment complaint or prohibited Defendant Hamilton from working on her grievance. (*Id.* at ¶¶ 40-50). Once a plaintiff has reasonable notice that she has a claim, the statute of limitations begins to run, even if there may be subsequent actionable conduct related to the time-barred event. *Bruce v. Int'l Longshoremen's Ass'n*, 7 F. Supp. 2d 609, 614 (D.Md. 1998). Plaintiff did not file her original complaint until August 30, 2019. (Dkt. No. 1-1 at 2). Thus, Plaintiff's DFR claim based on the alleged September 2018 harassment and the Unions' failure to investigate and respond to the harassment is time-barred.

Upon a careful review of the pleadings, the briefing, and the R & R, the Court finds the Magistrate Judge correctly determined that the remainder of Plaintiff's allegations do not allege a breach of the DFR by the Unions arising from Defendant Hamilton's conduct in the workplace. (Dkt. No. 74 at 13-14).[2] Plaintiff's additional allegations against Defendant Hamilton include the following: on January 11, 2020, Defendant Hamilton made false comments about Plaintiff to management (Dkt. No. 63 at ¶¶ 57-59); Defendant Hamilton arranged for an individual to approach Plaintiff on her route (*Id.* at ¶ 60); and on March 20, 2020 Defendant Hamilton tossed a satchel at Plaintiff. (*Id.* at ¶ 61). The Magistrate Judge found that because these allegations do not allege that Defendant Hamilton was acting in his Union capacity, the Amended Complaint fails to state a claim the Unions breached the DFR based on Defendant Hamilton's actions. (Dkt. No. 74 at 13-14). Plaintiff objects to the Magistrate Judge's finding and argues the Amended Complaint should be read that Defendant Hamilton, as the Union Representative, sexually harassed Plaintiff while discussing union business and then retaliated against her as a result of Plaintiff complaining of the same. (Dkt. No. 75 at 5-7). Yet, Plaintiff's argument does not clarify whether Defendant Hamilton's conduct from January and March 2020 could reasonably be construed as attributable to Defendant Hamilton acting in his representative capacity. *Johnson-Barber v. Runyon*, No. 96-4214-SAC, 2000 WL 1863483, at *6 (D. Kan. Oct. 12, 2000) ("a union official's duty to its members only applies when the official is acting in his or her representative role.). As the

---

[2] Defendants attach the parties' respective collective bargaining agreement ("CBA") to their motion to dismiss. (Dkt. No. 69-2). The Plaintiff did not object to this. The CBA permits the Unions to pursue grievances against the USPS only, not against a non-supervisory employee of the USPS. (Dkt. No. 69-2). The Magistrate Judge found that because the CBA permits the Unions to pursue grievances against the USPS only and not against a non-supervisory employee of the USPS, the Amended Complaint fails to allege a breach of the DFR by the Unions. (Dkt. No. 74 at 13). Plaintiff does not object to this contention.

8

remaining allegations against Defendant Hamilton fail to allege that he was acting in his Union capacity, the Plaintiff fails to state a claim for breach of the DFR by the Unions.

Upon a review of the pleadings, briefing, and the R & R, the Court finds the Magistrate Judge correctly determined the Amended Complaint does not allege a breach of the DFR by the Unions arising from the Unions' decision not to remove Defendant Hamilton as the branch President. (Dkt. No. 74 at 14-15). "The existence of the DFR does not permit federal scrutiny of all of a union's internal affairs. Because the DFR is imposed on the union as a result of its position as exclusive bargaining representative, it applies only to union conduct arising from the union's position as representative." *Bass v. Int'l Bhd. of Boilermakers*, 630 F.2d 1058, 1062-63 (5th Cir. 1980). A union's DFR "extends only to the union's conduct in representing employees in dealing with their employer such as in negotiating a CBA or in adjusting an employee's grievance. . . . On the other hand, the DFR does not apply to the Union's treatment of employees within its own internal structure." *Beck v. Commc'ns Workers of Am. (C.W.A.)*, 800 F.2d 1280, 1286-87 (4th Cir. 1986). The Unions' decision not to remove Defendant Hamilton from his role as branch President is not related to the Unions' role as exclusive bargaining representative, but rather implicates the Unions' internal affairs. *Bass*, 630 F.2d at 1063. Thus, the Amended Complaint fails to state a claim that the Unions breached the DFR for failing to remove Defendant Hamilton as the branch President.

Upon dismissal of Plaintiff's sole federal cause of action, the Magistrate Judge correctly recommended the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. (Dkt. No. 74 at 15-18). A district court may decline to exercise supplemental jurisdiction "if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Without Plaintiff's DFR claim, only state law claims for defamation and

9

assault remain. (Dkt. No. 63). *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 355 n.11 (1988)) (explaining that federal courts have an inherent power to remand removed state claims when the federal claims drop out of the case.") The Court declines to exercise supplemental jurisdiction over the remaining state law claims as the sole federal claim has been dismissed. Thus, the remaining claims are remanded to the Charleston County Court of Common Pleas.

## IV. Conclusion

For the reasons stated above, the Court **ADOPTS** the R & R as the Order of the Court. (Dkt. No. 74). Defendants' motion to dismiss is **GRANTED**. (Dkt. No. 69). The Court **DECLINES** to exercise supplemental jurisdiction. The Court **REMANDS** Plaintiff's remaining state law claims for defamation and assault to the Charleston County Court of Common Pleas. **AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

June 14, 2021
Charleston, South Carolina